21-2145, Evanston Insurance v. Desert State Life. And going for the appellant is Mr. Byrd. You may proceed. Good morning, Your Honors. May it please the Court. I'm Tom Byrd, appearing on behalf of the appellant, Evanston Insurance Company. Evanston's appeal presents three basic categories of challenges. The first one is a challenge to Judge Browning's denial of rescission. The second is Judge Browning's decision that Bennett and Desert State satisfied their burden of showing no prior knowledge to satisfy the no prior knowledge condition precedent. And the third issue is his decision not to enforce the misappropriation exclusion. I plan to focus this morning's argument on the third issue, without waiving any of Evanston's challenges on the other two. Well, before you do that, on the rescission, what's your best argument on that? First of all, it's clear that in light of the reservation rights letter that there was no untimeliness problem with the rescission. And secondly, the rescission analysis overlooks a New Mexico case called Prudential Life Insurance Company v. Anaya, in which case the New Mexico Supreme Court concluded that an insurance application made by a husband for a family insurance policy, which contained misrepresentations about the wife's medical conditions, rescinded the entire policy, notwithstanding the wife's arguments that she had nothing to do with the misrepresentation and that she was innocent of any wrongdoing. But the district court here relied on a very old New Mexico Supreme Court case, Putney. Yes. And don't we still have to honor that? That's the case that deals, Your Honor, with the question of timeliness. And we think that that analysis overlooks the fact, Why didn't it take from January to May, then, for the rescission demand to be made? Well, I don't know the answer to that question, Your Honor. I imagine it had something to do with figuring out how much to pay the insureds as a refund for the premium. But nonetheless, they were on notice that there was a possible rescission in the works. They had received a reservation of rights letter. And we've cited a law in our brief that demonstrates that under New Mexico law and the law generally, a rescission of a reservation of rights letter reserves the right to rescind. Weren't the insureds prejudiced by the delay from the November plea by Dells Thorpe to the formal rescission? I don't believe they've even claimed prejudice for that short period of time. And it certainly would be hard to imagine that such a short delay between the time of the reservation of rights letter and the actual sending of the rescission letters would, in fact, prejudice them in any way. In any event, Judge Browning decided that the rescission was untimely and that the adverse interest exception should have been... But you have to do more than notice the rescission. You also have to return the money. Yes, that's right, Your Honor. And I believe that's the reason there was some delay, because there was some trouble calculating... Well, but again, that gets to timeliness. And under Putney, again, I think there's a problem for you. Well, and I would rely again, perhaps repeating myself, that the reservation of rights letter satisfied the timeliness obligation because it put the insured on notice that there may be a rescission in light of Mr. Donna Thorpe's... Do you have a case of that effect even outside of New Mexico, a general insurance principle? We did cite some 10th Circuit law applying New Mexico precedence that recognized the reservation of rights letter preserves the insured's rights to exercise or assert its defenses and remedies, including rescission. I think we also have something from the restatement of insurance to that effect more generally. But is there anything that says the reservation right tolls the timeliness obligation? Yes, Your Honor. Those authorities are in our briefing. Is there any limit to how many months you can go then once you've done a letter? I imagine so, Your Honor. I didn't research the question, but it would make sense that a reservation of rights letter wouldn't permanently, indefinitely suspend the obligation to exercise the rescission right. So I haven't tried to probe the outer limits of the tolling effect. But your position is you had room to spare. You could have waited another month, another couple of months, a year, maybe. Well, I suppose that issue isn't before the court. I wouldn't say a year. And again, I haven't probed the outer limits of the suspension of effect of a reservation of rights letter. But certainly a couple months is within the reasonable boundaries of that universe. And so we feel like the timeliness determination overlooked the reservation of rights letter, which Judge Browning recognized in his findings of facts, but disregarded in his ruling on the summary judgment motion. The issue that I intended to focus on this morning was the misappropriation exclusion and the decision not to enforce it. And that determination was a prediction under the Erie Doctrine. The issue is whether that exclusion barred coverage for negligence-based claims against Ms. Bennett and Desert State that arose from Mr. Donisthorpe's embezzlement. The majority of courts conclude that negligence-based claims in those kinds of circumstances are foreclosed by an exclusion like the misappropriation exclusion. And Judge Browning recognized that that's the majority position. Nonetheless, Judge Browning predicted that the New Mexico Supreme Court would follow the minority position exemplified by a case called Watkins Glen Central School District versus National Union Fire Insurance Company, which is a decision from the Intermediate Appellate Court in New York. And Judge Browning made that prediction on the ground that New Mexico, its Supreme Court, interprets insurance coverage exclusions narrowly. And for that reason, he was going to follow the minority opinion. He was going to predict that the New Mexico Supreme Court would align itself with the minority camp. What's the New Mexico case that you countered with? Well, we focused on embezzlement cases, and there weren't any. The cases that we've focused on in the briefing, however, is Lopez versus New Mexico Public School Insurance Authority, which is at 870 Pacific 2nd, 745, a 1994 decision authored by Justice Ransom. And that case held, although it involved, I emphasize, a sexual misconduct exclusion, not an embezzlement exclusion. It concluded that negligence claims stemming from the sexual misconduct of the teacher, negligence claims against the school authorities, were also excluded by the sexual misconduct exclusion. That reasoning depended on the conclusion that the operative principle here is the origin of the claim, not the theory attached to the assertion of the claim for negligence. So that case should have foreclosed Judge Browning from making the decision he made. And notably, Judge Browning relied on the Lopez decision in recognizing that the exclusion in this case, the misappropriation exclusion, was unambiguous. So we think he got that part right. We think he should have applied the rest of the Lopez reasoning, even though this was an embezzlement exclusion. How do we square those rulings? When he first finds, first concludes that the exclusion is unambiguous, and then when applying it, he says it does not apply. So are we sort of doing a facial and as applied thing here? I mean, it's not stated in the opinion. I'm just sort of at sea. The defects we see in the reasoning, Your Honor, are very similar to the question you're asking. In other words, he's decided this was an unambiguous exclusion. But the reasoning he relied on to get to the decision that the Supreme Court, New Mexico Supreme Court, would side with the minority was that New Mexico interprets coverage exclusions narrowly. And our point on appeal is that you don't interpret or construe unambiguous policy. And also the problem, too, that I'm perplexed about is the court applied the exclusion to some defendants, but not to others. Yes. How do we do that? Well, that makes sense, Your Honor, because Judge Browning applied the exclusion to Mr. Donesthorpe. No one disagrees that he engaged in embezzlement. So the exclusion, clearly, I don't think there was any argument that the exclusion would apply to his claims because he was the person. Right, he was the actor, right. He was the person engaged in the embezzlement. The dispute is about whether negligence claims that stem from his misconduct are also excluded by the misappropriation exclusion, notwithstanding the fact that they are negligence claims, not direct embezzlement claims. So. Was his wife also an actor in this? Yeah. Her role in this was unclear. She was a party near the end of the whole proceeding. Leanne Kerr, I believe her name was, she stipulated that she was not insured. And that's how the case concluded. That eliminated the last controversy in the case and made Judge Browning's earlier rulings final and appealable, which is how we got here. But the remarkable thing about Judge Browning's ruling is that the Lopez opinion and the Watkins Glen Central School District case are so similar, actually. Both of them involve allegations of sexual misconduct by a teacher. Those claims leading to negligence claims against school officials. The Watkins Glen court decided that if you enforce this exclusion, it will essentially eviscerate the policy. In contrast, the Lopez case emphasized the origins of the damages, not the theory. So that's a stark contrast. And we think an application of the Erie Doctrine, which is intended to ensure that litigants in federal court are subjected to the same substantive law in diversity cases, that they would be subjected to governor litigation if they were before a state court, that is irreconcilable. His conclusion decided with the minority can't be squared. In this group of cases in the minority, the cases that he was relying on were those cases, cases in which the district court had concluded that the exclusion was unambiguous. I know that in Watkins Glen, the court decided that there was an ambiguity resulting from extrinsic evidence, that there was a discussion in that case about leaving out the sexual misconduct exclusion. So the district court decided that that extrinsic evidence essentially created an ambiguity about the party's intent and ruled on ambiguity. The intermediate appellate court, however, made clear that it was affirming that result on a different ground. Counsel, can I ask you a real quick question, direct question about the adverse interest argument? Certainly. That's organized under the rescission argument. Yes. If we rule against you on rescission, does that moot the adverse interest argument? If, for example, you conclude that the rescission was untimely? Correct. Yes, I think it does. I think that would be a shortcut to resolving that issue. But again, as we discussed earlier, I think the untimeliness decision is unsound because it overlooks the reservation of rights letter. Our opponents today respond to the argument about Lopez and about the absence of ambiguity and the dissonance between the judge's reasoning and his conclusion that the exclusion was unambiguous by relying on the reasonable expectation of the insured doctrine and specifically the Barth v. Coleman case. I'm sorry, Your Honors. I'm going to reserve the rest of my time for rebuttal. I realize that I've only got 30 seconds left. All right, Counsel. We'll do that. All right. Let's hear from the appellees. Appearing by Zoom is Ms. Sanders. You may commence. Thank you, Your Honor. My name is Maureen Sanders, and as a court note, I represent Helen Bennett in this matter. Critical to our discussion today are four facts that are really not in dispute. First, Helen Bennett made no misrepresentations to Evanston and did not participate or have knowledge of any embezzlement while it was happening. Secondly, Evanston issued a specified professional services professional liability policy to Desert State and identified the professional services as financial case management services to trust accounts and conservatorships. Thirdly, Evanston waited 15 months after Helen Bennett reported the CTO's embezzlement of fine film before attempting to rescind the policy. And fourthly, nowhere in the policy drafted by Evanston is there imputation language imputing the acts or statements of one insurer to another. Turning first to the rescission aspects of this case, Helen Bennett reported in March 2017 to Evanston and the authorities about the misuse of fine film by the CEO of Desert State. Ms. Sanders, was there any prejudice to your clients by the delay between the embezzlement coming to light and the formal rescission? What prejudice did your clients experience? Yes, Your Honor. There would be prejudice because during that time, Helen Bennett and Desert State was relying on the defense being provided by Evanston because once Ms. Bennett made the information known to Evanston and once the victim, the former Desert State's client, sued Ms. Bennett, she made a claim, a demand for defense and indemnity to Evanston. Evanston provided her defense and Ms. Bennett was relying on that defense being provided by Evanston. If later on, 15 months later, or in June 2018, Evanston pulled the policy or rescinded the policy, then if it was upheld, then she would have no longer the right of defense and would have to obtain new counsel and develop a whole new strategy as to how to proceed. And so I think because the litigation began… Is that what happened here? Yes, Your Honor. In December, I think that she was sued in December of 2017 and Evanston provided her a defense along, we believe, along with another insurance company that was involved that did not sue Ms. Bennett for no coverage determination. I'm sorry, did she switch counsel in May then after rescission? Oh no, she did not switch counsel because the policy was not rescinded. There was an attempt at rescission in June 2018, but that was never put into effect. And as the court noted earlier, any attempt at rescission earlier would have been ineffective because there was no return of agreement at that time. And the courts in New Mexico have been explicitly clear that New Mexico requires prompt rescission and return of agreement before rescission is effective. Turning then to the insurance policy itself, there are two arguments in this case, and that is that the insurance policy provides coverage to Bennett despite the prior knowledge condition present within the policy. And I know that one of you asked Mr. Burke about whether or not the advert, if the court rules against the insurance company on the rescission, whether or not adverse interest is moved. In the application, and he was the one that made the representation in the application that he was not aware of any actions or circumstances. Counsel, what do we do with the fact that our wrongdoer here was chosen by your client and others to proceed on their behalf, to act as their agent? And apparently there's reliance also on those representations made by the wrongdoer. Yes, Your Honor. Paul Donisork was the CEO of Bethesda Safe Life Management, and as such, in 2016, completed the application for insurance. At that time, he was aware of his investment. However, Ms. Bennett is not aware of his investment, and there is nothing in the policy that imputes the misrepresentation of Paul Donisork to Helen Bennett or to Desert State. Maybe, you know, he was acting on behalf of Desert State when he was applying for removal. That's not in dispute, but the reality is when he answered that question, he was acting adversely to Desert State. And that's where the adverse interest principle comes in, because at that time that he answered that he was not aware of any claim, he was in fact acting adverse to Desert State's principle. And therefore, the adverse interest principle of agency law is applicable to that situation. The important thing here, I think, is that Evanston, like I said earlier, issued a specified professional services professional liability policy to Desert State. It's a liability policy. It is to protect Desert State and its board members because Helen Bennett would have been a board member, and under the policy, she is what I call a definitional insurer. She became an insurer by definition because the policy provided that coverage to her. And Evanston was aware of the fact that what it was covering was financial case management services to trust accounts and conservatorships. And the expectation of Evanston would be that any third-party claims against any of the insurers would in fact be done for mismanagement of funds. I see that I've run through half of the time allotted to Appellee, so unless the court has a question, I'll defer to Mr. Davis. All right, let's hear from Mr. Davis. Good morning, Your Honor. Good morning. Frank Davis on behalf of the former clients of Desert State Life Management. The district court's decision should be affirmed for three reasons. One, Evanston did not act immediately or promptly to rescind the policy upon learning of Donna Storb's defalcation. Two, Donna Storb's prior knowledge of wrongdoing cannot be imputed to the innocent insurers. And three, the exclusions in the policy do not include coverage. Let's pick up with that last one because we haven't talked about that. Exclusion P and the commingling and the misappropriation. There is a New Mexico Court of Appeals opinion, Baca versus New Mexico Highway Department, I think, that says the term arising out of is to be construed broadly even though it's in an exclusion. If we apply that broadly, doesn't the exclusion apply? And if not, why not? No, Your Honor, it does not apply. And there are a couple of reasons that the exclusion would not apply to the claims brought by the former clients. First, Judge Brown applied the language of the exclusion as it is written. And as Mr. Byrd pointed out, you look at the impetus of the claims, you look at the origin of the claims under the Lopez decision decided by the New Mexico Supreme Court. In terms of the complaint, in the complaint there is this independent theory of negligence. There's a mismanagement of the client's funds. There's poor investment decisions that are being pled. There are the lack of internal control, lack of accounting, software issues. All of these issues are independent of the... But if you take out the embezzlement, there's no lawsuit, right? I don't agree with that, Your Honor. I think when we initially pled this, these negligence claims were pled alternatively to the embezzlement. There still would be a lawsuit over going back to the management of Desert State, for instance. The investment decisions were terrible on behalf of the clients, and that part of that may have been related to Donesthorp pilfering the accounts, that he wasn't making wise investment decisions because he was still in the money. But that's a tangential relationship. Those claims of mismanagement of client funds don't arise out of the theft that Donesthorp was perpetrating against the clients. Well, if we read arising out of broadly, do you lose? No, Your Honor. I think it has been read and applied broadly by the district court. Well, broadly would be to include anything that arose out of the embezzlement. Yes, Your Honor. I believe that the way we have pled this complaint, that the negligence claims are independent of any defalcation by Donesthorp. They simply just don't. An investment decision by Mr. Donesthorp does not relate to the defalcation that was perpetrated. Are those outside negligence claims, are they related to the procedure or process that was in place that enabled him to embezzle? There are theories that are related to the lack of internal controls and the lack of accounting that could in some way relate to the defalcation. Yes, that is correct. But, again, I think that if we look at footnote 42, for instance, of the district court's summary judgment decision, the district court points out that Evanston has in other policies written better exclusionary language. With a stroke of a pen, Evanston could have excluded all of the claims that were brought by the former clients. And not only that, they could have included the innocent insurance under the policy as being excluded under these exclusions for co-mingling or for misappropriation. Going back to the rescission argument, I think there are additional facts that the court should consider in deciding rescission. And just to briefly bolster the timeline there, when Ms. Bennett reported the defalcation in March of 2017, subsequently there were a flurry of lawsuits that were filed against Desert State Life Management. Between March and July of 2017, Evanston lawyered out. They hired a lawyer in June of 2017 to provide them with a coverage opinion as it related to the claims that were being made on the policy. As a result of hiring a lawyer in June of 2017 to provide them with a coverage opinion, they thereby in July canceled the policy. At that point in time, they had a lawyer who was competent, who was providing them advice. They could have canceled the policy. They waited almost an entire year before canceling the policy. I'd like to go back to the exclusion argument again. How do we justify the district court in this case going with the minority line of cases when he is interpreting state law? That's sort of a jump and yet another jump after that. Yes, Your Honor. I think what the district court looked at was the overarching expansion of coverage rights for an insured that is present in New Mexico. We have cited in our brief the numerous instances where the Supreme Court or appellate courts of New Mexico have said these exclusions should be narrowly construed. Narrowly construing them, what the court is endeavoring to do is when we're dealing with exclusions to create additional rights to coverage for the insureds under the policy. Does this all turn on the interpretation of a rising out of? No, Your Honor. I think the judge correctly applied this language as it is written. I think that Evanston could have written a better policy, which they have done in other instances. Since we're applying state court decisions here and the district court is opining on what he believes the state court would rule in a couple of instances, big questions actually. Should this case be certified to the New Mexico Supreme Court? I don't believe so, Your Honor. I think Judge Browning got it right in these instances. His first eerie guess was in compliance with the Restatement Second of Agency Sections 280 and 282 as it relates to a principal and an agent. The other eerie guess he made was related to a narrowly construed exclusion. May I finish my thought, Your Honor? Go ahead and finish your thought. Okay, a narrow exclusion that does not preclude innocent insurers or the claims that are not directly arising out of the defalcation. Thank you. Thank you, counsel. Mr. Berg, you had some more about it? Kevin, could you give him a minute, please? Thank you, Your Honor. I'll make this very brief. Ms. Saunders mentioned that there's no imputation clause in this policy, but I would emphasize that the policy does include in the common policy provisions the following language. By acceptance of this policy, the insureds agree as follows, that the information and statements contained in the applications are their, the insured's, representations, and that they shall be deemed material to the acceptance of the risk or hazard assumed by the company under this policy and that this policy is issued in reliance upon the truth of such representations. That language undercuts any attempt by Bennett and Desert State to disassociate themselves under an adverse interest theory, under an innocent insured theory, under the argument that there's no imputation clause in this policy. They have adopted as a condition of accepting coverage under this policy all of the representations that Mr. Donisler made. Thank you, counsel. We appreciate the arguments this morning. Counsel are excused and the case will be submitted.